[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JUNE 14, 2006
THOMAS K. KAHN
CLERK

No. 05-13932
Non-Argument Calendar

_____

D. C. Docket No. 04-00215-CR-T-E

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

BENNIE BASCOMB, JR.,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Middle District of Alabama

_____

**(June 14, 2006)**

Before CARNES, PRYOR and HILL, Circuit Judges.

CARNES, Circuit Judge:

Bennie Bascomb, Jr. appeals the 120-month sentence imposed after he

pleaded guilty to violations of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 924(c)(1)(A). Bascomb was sentenced in accordance with the mandatory minimums set out by those statutes. As part of his plea agreement, Bascomb entered a voluntary and knowing waiver of his right to appeal, and the grounds of this appeal were included in that waiver. On the basis of that waiver, we grant the government's motion to dismiss Bascomb's appeal.

## I.

Bascomb's conviction resulted from his cultivation of marijuana plants at his home and his possession of a .22 caliber pistol at the time of his arrest. Bascomb's wife was also charged with manufacturing (the term used in the statute) marijuana. The government offered to drop all charges against his wife if Bascomb would plead guilty, admit that he had been growing more than one hundred marijuana plants and that he had possessed the handgun, and agree to an appeal waiver. Bascomb agreed to do so. Those violations triggered mandatory five-year sentences that must run consecutively. See 21 U.S.C. § 841; 18 U.S.C. § 924.

Bascomb does not dispute the knowing and voluntary nature of his appeal waiver, and the transcript of his change of plea proceedings shows that the magistrate judge specifically questioned him about the waiver, receiving

assurances that Bascomb understood what he was doing; defense counsel also acknowledged the waiver. At the sentencing proceedings, the district court indicated that Bascomb would have received a shorter sentence but for the mandatory minimums required by statute. The court rejected Bascomb's contention that the sentence was cruel and unusual but agreed that it was unreasonable and encouraged Bascomb to appeal it. The court did so notwithstanding the fact that the issue was squarely covered by the terms of the appeal waiver, which expressly ruled out an appeal on any ground except ineffective assistance of counsel and prosecutorial misconduct.

Bascomb contends that the sentence violates the Eighth Amendment because it is cruel and unusual. The government contends that his appeal should be dismissed based on Bascomb's agreement to waive his right to appeal. Bascomb argues that because the government did not object at sentencing to his stated intention to appeal, or to the district court's encouragement of the appeal, it has acquiesced to this appeal or waived the waiver. Bascomb also argues that he should not be bound to any agreement waiving his right to challenge an unconstitutional sentence.

## II.

We decide the effectiveness of the appeal waiver now because requiring the

3

government to file a brief where there has been a valid appeal waiver undermines the interests of both the government and defendants generally. The reason:

> As we explained in [United States v.]Bushert, plea agreements containing such waivers save the government time and money by conveying an immediate and tangible benefit in the saving of prosecutorial resources. 997 F.2d at [1343, 1347 (11th Cir. 1993)] A sentence appeal waiver is also of value to a defendant, because it is another chip the defendant can bring to the bargaining table and trade for additional concessions from the government. See id. Requiring the government to file an appeal brief even though there is an appeal waiver substantially diminishes the value of the waiver to the government, and by extension to defendants who are willing to bargain away their right to appeal the sentence. Accordingly, where it is clear from the plea agreement and the Rule 11 colloquy, or from some other part of the record, that the defendant knowingly and voluntarily entered into a sentence appeal waiver, that waiver should be enforced without requiring the government to brief the merits of the appeal. Where the appeal is due to be dismissed, sooner is better than later.

United States v. Buchanan, 131 F.3d 1005, 1008–09 (11th Cir. 1997).

An appeal waiver is valid if a defendant enters into it knowingly and voluntarily. Bushert, 997 F.2d at 1350. We have consistently enforced knowing and voluntary appeal waivers according to their terms. See United States v. Brown, 415 F.3d 1257, 1272 (11th Cir. 2005); United States v. Frye, 402 F.3d 1123, 1129 (11th Cir. 2005); Williams v. United States, 396 F.3d 1340, 1342 (11th

4

Cir. 2005); United States v. Rubbo, 396 F.3d 1330, 1335 (11th Cir. 2005); United States v. Weaver, 275 F.3d 1320, 1333 (11th Cir. 2001); United States v. Pease, 240 F.3d 938, 942 (11th Cir. 2001); Buchanan, 131 F.3d at 1009.

United States v. Howle, 166 F.3d 1166 (11th Cir. 1999), involved a plea agreement in which Howle waived the right to appeal his sentence and the right to attack his conviction in any post-conviction proceeding. Id. at 1167. Undeterred by that, Howle appealed on a basis that was not covered by either of the two limited exceptions carved out in the appeal waiver. See id. at 1167 n.2. Seeking to escape the tight grip of his waiver, Howle contended that it was invalidated by the district court's statements encouraging him to pursue an appeal. Id. at 1168. The district court had said:

> I've tried hard to see if I could say that this was outside the heartland. I can't say that it is . . . . I will say, however, that I don't think I have the power to depart, and by saying that, that means that you are allowed to appeal me. And if the Eleventh Circuit disagrees with me and says that I am wrong, I did have the power to depart, then we can come back. I have already indicated I likely, given the discretion, would probably not do prison in this case. I would probably do no more than halfway house . . . .
>
> So I cannot depart in this case but I invite and welcome an appeal. I will stay the report date so that you can appeal me if you want to . . . .

5

Id. As in the present case, the government in Howle did not object to the district court's invitation for Howle to appeal despite his having waived his right to do so. See id. ("Neither the Government nor the defendant brought the plea bargain to the court's attention after this statement was made."). The court was aware of the waiver and had specifically questioned the defendant about it in the course of ascertaining that it was knowing and voluntary. Id. at 1167. As in the present case, neither party expressly stated to the court that the waiver would bar an appeal of the issue that the court had encouraged the defendant to pursue. See id. at 1167–68. In this case, however, defense counsel did acknowledge in the exchange leading to the court's comments that the defendant could appeal only "to the extent we have any right to appeal, and that has been limited by the negotiations."

In Howle we concluded that the district court's statements were "most reasonably interpreted as dicta that had no effect on the court's prior acceptance of the plea agreement." Id. at 1168. We determined that a district court does not have the power to modify the terms of a plea agreement, which in Howle included the appeal waiver. Id. We reasoned that the parties had struck a deal that included the appeal waiver, and altering the terms of that waiver would have cut the heart out of the bargain. See id. at 1169. "Having approved the plea agreement, the

district court had no more right to change its terms than it would have to change the terms of any other contract." Id. We observed that a waiver of appeal even includes a waiver of the right to appeal "blatant error." Id. However, we did note that "[i]n extreme circumstances—for instance, if the district court had sentenced Howle to a public flogging—due process may require that an appeal be heard despite a previous waiver." See id. at 1169 n.5.

Howle was not scheduled to be flogged, so we declined to reach the merits of the appeal and dismissed it based on the plea agreement as it was written. Id. at 1169. If the government had been required to remind the court of the appeal waiver when the court encouraged Howle to appeal, the decision in that case would have come out differently. See id. We conclude, therefore, that Howle forecloses Bascomb's argument that if a district court encourages a defendant to appeal a particular issue and the government does not then and there assert that the appeal is barred by the appeal waiver, it is prevented from doing so on appeal.

The result in Howle and our reading of it is consistent with our earlier holding in Buchanan, 131 F.3d at 1008–09, that an appeal waiver was enforceable despite the fact that at the sentence hearing the parties had disputed the merits of a particular sentencing issue. See id. at 1009. We stated: "Despite the sharp disagreement of the parties on the merits of that issue, there is no indication either

7

in the colloquy or in the plea agreement that the parties agreed the issue would be excepted from the appeal waiver the broad terms of which would cover it." Id. at 1007. We concluded: "Notwithstanding Buchanan's explicit reservation of the right to argue his position about that issue at sentencing, a right that he exercised, the issue was not exempted from the appeal waiver. We enforce the appeal waiver according to its terms." Id. at 1009. Buchanan establishes that a vigorous dispute about an issue during the sentencing proceedings does not preserve that issue for appeal when the terms of the appeal waiver do not except it from the waiver.

In the present case Bascomb pleaded guilty, and his plea was accepted during change of plea proceedings in which he was specifically questioned about his understanding of the appeal waiver. The court found that the waiver was knowingly and voluntarily made, and Bascomb does not dispute that it was. The district court accepted the plea agreement, including as it did the appeal waiver. Bascomb was adjudicated guilty on the basis of his plea pursuant to the agreement. During the sentencing proceedings, defense counsel argued that the mandatory minimum mandatory sentence the court was forced to impose was unreasonable but recognized the problem he would have raising that issue on appeal. He said:

> Prior to the Court announcing sentencing, Your Honor,
> just for the record to the extent we have any right to
> appeal, and that has been limited by the negotiations, we

want to preserve the right to appeal the fact that we think that the sentence the Court has to impose in this case by way of mandate from Congress is unreasonable, and that –

The district court interrupted counsel to inform him that he could not appeal an issue unless he presented it to the district court first, and "[t]hen you can appeal it." Counsel argued that the sentence of 120 months the court would be forced to impose was unreasonable and cruel and unusual. The court agreed that the sentence was unreasonable but not that it was cruel and unusual. Then counsel stated, "Yes, Your Honor, but I've made my record," and the court replied: "Certainly. And I think you should perhaps pursue it."

In his special concurrence, our colleague suggests that "[w]hat really counts, according to Howle, is what the government told the defendant." We think what really counts under Howle and all of our other appeal waiver decisions is what the defendant and the government agreed to in the plea bargain. What counts is whether the defendant knowingly and voluntarily agreed to waive his right to appeal an issue or issues in an agreement the court accepted and which led to the plea and sentence. Not only is that what counts, that is what should count. We would not revisit the Howle decision even if the prior panel precedent rule permitted us to do so.

The <u>Howle</u> holding reiterates what we have held before, <u>Buchanan</u>, 131 F.3d at 1008-09, which is that knowingly and voluntarily entered plea agreements containing appeal waivers are like contracts in which the government and the defendant have bargained for a deal. <u>See</u> <u>Howle</u>, 166 F.3d at 1168.  Defendants and the government alike benefit from the ability to bargain and undermining the enforceability of such bargains harm all parties that use them.  <u>Buchanan</u>, 131 F.3d at 1008.  For that reason, among others, as long as an appeal waiver is voluntarily and knowingly entered into as part of a valid plea agreement, and that agreement is accepted by the court, the waiver is enforceable.  It cannot be vitiated or altered by comments the court makes during sentencing.

Appealing his sentence is one of the rights Bascomb traded for the government's promise to drop all charges against his wife.  In negotiating an agreement, Bascomb was free to bargain away his right to raise constitutional issues as well as non-constitutional ones, and he did so.  <u>See</u> <u>Brown</u>, 415 F.3d at 1272 (enforcing an appeal waiver despite defendant's contention that the statute under which he was convicted violated the non-delegation doctrine of Article I of the Constitution); <u>Williams</u>, 396 F.3d at 1342 (holding that the plain language of a sentence appeal waiver can preclude a 28 U.S.C. § 2255 claim based on ineffective assistance of counsel); <u>Rubbo</u>, 396 F.3d at 1335 (holding that the right

10

to appeal a sentence on <u>Apprendi</u>/<u>Booker</u> grounds can be waived in a plea agreement).

We do not mean to imply that the right to appeal a sentence that violates the Eighth Amendment because it is cruel and unusual for some reason other than its length will always be barred by an appeal waiver. <u>See</u> <u>Howle</u>, 166 F.3d at 1169 n.5 ("In extreme circumstances—for instance, if the district court had sentenced Howle to a public flogging—due process may require that an appeal be heard despite a previous waiver."). All we need to decide here is that a defendant may, and this one did, knowingly and voluntarily waive his right to appeal a sentence on the ground that its length, which is less than the statutory maximum, renders it cruel and unusual.

APPEAL DISMISSED.

HILL, Circuit Judge, specially concurring:

Bennie Bascomb, Jr. appeals from his conviction and ten-year sentence of confinement, asserting that his sentence, mandated by statute, violates his Eighth Amendment right to be free from cruel and unusual punishment. The United States moves to dismiss Bascomb's appeal on the grounds that he has waived his right to appeal as part of his agreement to plead guilty.

I.

Bascomb grew marijuana at his home. The government did not contend that he trafficked in the drug. Bascomb's wife, however, also lived in the home and was charged with possession of the marijuana. At the time of his arrest, Bascomb possessed and was subsequently also charged with possession of a .22 caliber pistol.

Since he was not a drug dealer, Bascomb had little to offer the government in exchange for lesser charges. He did, however, want his wife to go free. As a result, he agreed to a deal in which the government dropped all charges against his wife in exchange for his guilty plea and admission that he was growing "more than 100" marijuana plants – the number of plants that would trigger a mandatory five-year sentence – as well as to the possession of the handgun – also triggering a mandatory five-year minimum sentence. Under the statutes, these sentences

12

would be required to run consecutively.[1]

At sentencing, the district judge expressed concern about the length of the mandatory minimum consecutive sentences – ten years:

> It's almost ironic, but if he were a drug dealer he'd almost be in better shape. I mean this is an instance where if he was trafficking in drugs so he could turn somebody in, then he would get a lesser sentence. He's a person who perhaps is growing drugs for himself gets the harsher sentences. It's like the law has turned on its head. . . . The court officially states here that but for the mandatory minimum sentence I would give this defendant a significantly less sentence. . . . The sentence would be different. Dramatically different.[2]

Bascomb objected at sentencing that the two consecutive mandatory five-year minimum sentences were grossly excessive and violated his Eighth Amendment right to proportional punishment. *See Solem v. Helm*, 463 U.S. 298, 303 (1983) ("The Constitution requires us to examine Helm's sentence to determine if it is proportionate to this crime"). He stated that he wished to preserve the right to appeal the sentence on this ground.

The district court, noted that "You can't appeal that unless I pass on it first. . . . You have to first present it to me and then I have to find whether it's

---

[1]As far as the record discloses, the government gave nothing further and Bascomb received nothing but his wife's release.

[2]At sentencing, the Probation Officer advised the court that ". . . absent the mandatory minimum required sentence, the amount of marijuana we're talking about in this case, the guidelines sentencing range would be between twelve and eighteen months."

unreasonable or not."

Bascomb's counsel then stated:

And it is our position that in this case, Your Honor, we believe the sentence the Court is going to impose, because it has no other authority to do so , is unreasonable. . . . The fact that the Eighth Amendment, that it's cruel and unusual in light of the fact that he has a criminal history category of one, no prior involvement in law enforcement, yet the Court has to in this circumstance impose a sentence of a hundred and twenty months.  It is our position that this sentence is cruel and unusual and unreasonable under 3553.

The district court stated that he agreed with the defendant that the sentence was unreasonable, but held that it did not violate the Eighth Amendment, to which Bascomb responded, "Yes, your Honor, but I've made my record.  The district court agreed, stating, "Certainly.  And I think you should perhaps pursue it."

At this point the court asked the government, "Anything else, Counsel?" The government responded, "Not from the government, Your Honor."

The district court then announced, "The court overrules the contention that the sentence is cruel and unusual.  I do agree that it's unreasonable, but that doesn't amount to being cruel and unusual."

Although Bascomb waived his right to appeal all issues save ineffective assistance of counsel and prosecutorial misconduct, he appeals his sentence asserting that it violates his constitutional right under Eighth Amendment to a

14

sentence proportionate to his crime. The government filed a motion to dismiss, based upon Bascomb's agreement to waive his right to appeal. Bascomb argues that the government acquiesced at sentencing to both the objection and this appeal by not contradicting the district court's interpretation of the legal consequences of the events at sentencing.

## II.

There can be no doubt, as the majority today holds, that Bascomb agreed in his plea agreement not to appeal his conviction and sentence on any grounds other than ineffective assistance of counsel or prosecutorial misconduct. Furthermore, I agree with the majority that the result in this case is controlled by *United States v. Howle*, 166 F.3d 1166 (11th Cir. 1999). I write to suggest, however, that the court might well revisit *Howle*.

Under *Howle*, the judicial authority of the United States, which I had heretofore believed reposed in the district judge, has been transferred to the executive, an Assistant United States Attorney.[3] *Howle* instructs that the

---

[3]Of course, this case illustrates that a significant portion of judicial authority has already been transferred by Congress to itself. By creating mandatory minimum sentences, Congress – well in advance of the commission of the offense – has resolved all pertinent issues and considerations in crafting an appropriate sentence. While much as been made (appropriately it is submitted) about "judicial legislating," this sort of "congressional adjudication" represents an unfortunate blurring of the separate responsibilities of our three branches of government.

Government counsel, the executive branch, gets into the act by selecting charges from a menu of possible transgressions, thereby counting backwards from the desired sentence in this

interpretation and explanation of the defendant's rights – including his right to appeal – provided by the district judge to the defendant at sentencing is not binding, but rather merely *dicta*. What really counts, according to *Howle*, is what the government told the defendant. Imagine the defendant's surprise upon learning that the district judge's interpretation of the law, explained to the defendant at sentencing, has been trumped by the contract he signed with the government's attorney. All the more surprising, since at sentencing when the judge explained the law to the defendant, including his right to appeal, the government voiced no objection, its attorney stood mute, not reminding anyone of the inviolate contractual rights that the government knew would ultimately prevail over the judge's interpretation of the law.[4]

This holding is particularly disturbing since we have enshrined the plea colloquy as the hallmark of a knowing and voluntary plea. Leaving out even a smidgen of this mantra requires a finding that the plea was neither knowing nor voluntary. Nonetheless, when the district court makes an affirmative misstatement

---

case to the charge that will produce it. As part of this process, the government chooses to forego its delegated obligation to see to "the faithful execution of the laws" by dismissing charges against the wife.

The third branch is eliminated and given no role to play in this process.

[4]We are taught that, when the district judge explains the legal result of the proceedings, including events occurring during sentencing, to the defendant, the defendant should ask the AUSA whether the explanation is correct.

of the law to the defendant, say, for example, "if I say this or do that, you have the

right to appeal," there is no legal effect on the plea whatsoever. It is as though it

never occurred. It is *dicta*.

This apparently is the law. I reluctantly concur.